It is number 16-13263, Antonio Suarez et al. versus Uber Technologies, Incorporated. Mr. Hill. Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Brandon Hill. We're here today on the grant to give a motion to compel arbitration filed by Uber in a case from the Middle District of Florida. I will start this oral argument by saying the District Court is not entirely to blame. We left out one of the most critical arguments that should have been raised, and that is whether or not the 9-USC-1 exemption for transportation workers exempted my clients from the Federal Arbitration Act. Uber is a new company. How do you think we get around your failure? Well, I present that issue below. I thought long and hard about that, Your Honor. The first thing I researched, and there's a case style, Dean Witter v. Reynolds, 11th Circuit, 741 F.2D 355. There's really five ways you can bring up a new issue on appeal. Three of them apply here. One, is it a question of pure law? The answer is unequivocally yes. Whether or not these folks are exempt or not is a question for the courts, not for the jury. It's not really purely a question of law. We've got to then delve down and see what kind of jobs they do, what kind of work they do. Inherent in that, it's a mixed question of fact and law, so there would be some factual development required, correct? Well, we think we have. The facts developed in terms of the contract that's already been turned over by Uber, we don't think it would take much. We think that that would be an issue for the court. The larger issue, though, is this an issue where substantial justice is at stake? The question to that, again, is unequivocally yes. Uber is a huge company. The ride-sharing economy is new. It's new to Florida, unless you lived in San Francisco. You haven't been exposed to it very long. Based upon my research, there's about 400,000 Uber drivers, millions of passengers. It's a billion-dollar company. But as for your particular clients, they're going to be able to go to arbitration, and there will be somebody there to rule on this. And as to the hundreds of thousands of other drivers, next lawsuit, they won't forget the argument and they can go forward. Is that not correct? That would be correct, Your Honor, if the court were to reject our contention that the court should look at the 9 U.S.C. 1 exemption, except we also forgot to raise. Let's talk about this one first before you get to the other one. In your brief, there's no argument that you meet those Dean Witter factors either. You drop a footnote to say that you think you presented the argument because it was subsumed within the district court's obligation to decide whether the FAA even applied. That's one of the first footnotes in your brief. But you don't go through those factors as to why we should, in the exercise of discretion, entertain an issue for the first time on appeal, right? I think it could have been done better. I think in the initial brief, we talk about the fact that Uber is a huge company. I think we talk about the fact that Uber employs these 327,000 people. I think that we talk about the fact in our reply brief that it is an issue that needs to be addressed by the court. We did, in all fairness to us, in our opening, I'm sorry, in the initial brief to the court at the district court level, mention 9 U.S.C. 1 and the application of whether or not the FAA applied at all or not was the issue. It could have been pinpointed better. But you agreed that it did. You just thought you were out because it was unconscionable on federal and state law grounds. But you never told the district court, we're completely out of the FAA. And that seems to me to be problematic. That's correct, Your Honor. And I won't argue with you. I'm not disputing that. I'm just saying that this is such an important issue. It's such a big company. It's such a new technology that the court should give it the chance that Dean Witter provides the court the power to give it. And if we were going to entertain your argument, the ability to make it, we'd really have to remand the district court to start over again, right? I think that's right, Your Honor. But the second issue, if I might, in terms of whether or not we raised everything correctly, I have to point out that we also failed to argue correctly that the Uber agreement is illegal and unenforceable under the National Labor Relations Act. Now, in all fairness to us, in our brief to the district court, we did argue that the collective class action waiver was unenforceable at the end of the brief. We did not cite to the NLRA, which we should have. At the time, the NLRA was not as hot of a topic as it is now. After we filed our brief at the district court level and after Uber filed its response, and I think even after the order came out, then the Seventh Circuit came out with a decision called Lewis v. Epic Systems. The Ninth Circuit followed soon after with a case called Morgan Stanley. In both cases, the courts came down hard on arbitration agreements that included class action waivers. But assuming, again, assuming that we were going to consider your argument, weren't those cases based on mandatory arbitration provisions, not the type that's before us? Well, Judge, Your Honor, Your Honor, you cannot waive your rights under the NLRA. My question was, and I may be wrong and you may know more about this, I thought that they were dealing with something where it was mandatory that one, to be employed by a company, you had to agree to the arbitration, whereas Uber's is, it's voluntary. You don't have to do it. It's really not voluntary. Am I wrong? I could be wrong about that. Am I wrong? You're not wrong. Uber gives the applicants 30 days to opt out. And the reality is most Uber drivers aren't lawyers. You know, they don't know exactly what this is. That means you're not within the orbit of the Seventh Circuit case anymore. Well, that's not exactly true because in Lewis, and I've actually got it pinpointed here at 823 F.3D, page 8, the Lewis decision also expressly says that while the Ninth Circuit has held that an arbitration agreement mandating individual arbitration may be enforceable where the employee had the right to opt out of the agreement without penalty, meaning the employer did not interfere with, or restrain, or coerce, or intersection in the violation of Section 8, that decision conflicts with a much earlier decision from this Court, which held that contracts between employers and individual employees that stipulate a way Section 7 rights necessarily interfere with employees' exercise of those rights in violation of Section 8. This is a stone which has never been undermined in making a violation of Section 7 a per se violation. In other words, an opt out, the 30-day opt out that Uber gives these folks doesn't matter. The fact that the arbitration agreement is in there, that it has a class action waiver, makes it per se unenforceable under the FAA per the NLRA and Section 7. Mr. Hill, from my perspective, the difficulty of figuring out this appeal from the perspective of your clients is that this doesn't look like a case where you're asking us to address one issue for the first time on appeal. You've got three. I mean, this is a completely different case on appeal than it was in the District Court. It's not like, oh, we made four arguments, we missed one, we're raising those four, we'd like you to address the fifth one too under Dean Witter and the exercise of your discretion. But, you know, you didn't raise the exemption under Section 1 of the FAA, you didn't attack the delegation clause, and you didn't rely on NLRA provisions to knock out the class action collective waiver. I mean, what's a district judge going to think when this case, if this case gets turned around? He's like, I don't recognize this case. This is not the one I had. It must belong to some other district judge somewhere else in the circuit. I've got to go find out who that is. I understand where you're coming from, Your Honor. I can't stand up here and tell you that I raised issues that I didn't. And we, believe me, we appreciate the candor. We really do. Sure. The one thing I will say is this in terms of, because I can kind of pick up where this is headed. In terms of the delegation clause, the one problem that we do have is that if there's going to, if this is headed to arbitration, then the arbitrator ought to decide everything. The arbitrator ought to decide arbitrability. The arbitrator ought to decide whether or not there's a class waiver or not. The arbitrator ought to decide whether or not Section 7 of the NLRA has been violated. And one thing that the district court order did do that we would ask for some type of relief on is if this is going to be ordered to arbitration, that the arbitrator decide everything. Did the district court say something that indicated the arbitrator couldn't decide everything? The district court struck our class action allegations and dismissed the case. Okay. All right. Thank you very much. We'll give you your time for rebuttal. Mr. Boutrous. Good morning, Your Honors. Theodore J. Boutrous, Jr. for Uber. And I'll just pick up with the fact that Judge Moody would not recognize the case because these issues, as counsel, and I commend his candor as well, these issues were not mentioned at any stage on, at any point. The Section 1 Federal Arbitration Act issue was not mentioned. There was a cite. It's on page 6 of the memorandum opposing, this is document 19, where they cited the FAA Section 1 at SAC and then went on to argue unconscionability, which was their only argument below on Section 1. And this Court's decision in Access Now versus Southwest Airlines talks about the principles of waiver and proper preservation, and they serve important institutional interests so that the district court has a chance to review the issues before their reverse appeal for issues that weren't presented to the district court. In addition, saving resources. There's no factual record. There's no legal record on the Section 1 FAA argument whatsoever. And it's not an issue that relates to the fact that Uber is a large company. Southwest Airlines was a large company, and in that case, this Court noted that the fifth factor under Dean Witter and under Access Now, the issue of significant interest. The Court in Access Now said this is a significant issue, is whether visually impaired people had access, could bring a claim under the discrimination laws for not having access to the Southwest Airlines website. And the Court said, well, that's a significant issue, but it wasn't preserved below. It wasn't raised. This is an improper vehicle. So we don't think that the standards were satisfied, and they weren't even argued in the opening brief, so those were waived as well. Let's talk about some of the issues that the district court did address. Sure. And let's talk about the opt-out that Uber drivers have from the agreement. Yes. Insofar as that opt-out provision is concerned with regards to a class or collective action, isn't that opt-out ineffective unless a lot of Uber drivers opt out? In other words, if Uber driver number one decides to opt out, but we'll take Mr. Hill's numbers just as a starting point. If 399,000 other Uber drivers decide not to opt out, then Uber driver number one is left with a class action of one. Isn't that ineffective? No, Your Honor. First, as the district court found, many Uber drivers did opt out of the agreement, and that's a factual finding that hasn't been challenged in this court, number one. Number two, as this court held in the Walther case, interpreting the FAA. Where did the district court get that information? It was presented in the record to the district court by Uber in the declarations and the material that Uber submitted to the district court. To compel arbitration? Yes, in the motion to compel arbitration. And I believe the record reflects thousands of people opted out, but the district court found that many people opted out. It was prominently featured. And, in fact, the arbitration agreement issue here was actually crafted by the district judge in the Northern District of California, Judge Chen, as part of a different case where a lot of these issues were presented. So there were disclosures at the beginning of the agreement, as Judge Moody found, that you have a right to opt out, consider this carefully. And so many drivers did opt out. So I think it's very effective. And there was no argument that it was depriving a right, a substantive right, to proceed as a class action. And I did want to mention, counsel was saying that there was something about the opt-out clause that wasn't valid. It's 30 days after the original sign-up as a driver on the platform. The individual could contemplate whether to be in arbitration. And it's in bold, and it's at the beginning of the agreement. It's inside the agreement. And so it's a very, very robust right to opt out. And that's what the district court found based on the factual record before it in this case. And, again, that finding has not been challenged at all in this court. And with respect to that. Let me ask you about one other issue, please, and then I'll let you get to the rest of your argument. One of the arguments that the drivers make in their brief, I think it's the last one or one of the last two, is that there should have been a stay as opposed to dismissal. And I recognize that there are cases, a number of them, from our court that say that dismissal can be an appropriate remedy. But the language of the FAA doesn't say dismissal. And some of our earlier cases say stay. Yes. So why should there be a dismissal? If you were deciding this as a pure issue with no precedent to bind you one way or another, why wouldn't you stick to the language of the statute and require the district court to stay at pending arbitration and let everybody come back or not come back once arbitration was completed? Yes, Your Honor. Two things. First, the court, this court in an earlier case, did say that the district court should have stayed the case while arbitration proceeded. But in that case, the defendants had asked that the case go to arbitration and that there be a stay. I know. I know. I think you've got case law supporting your position that the district court did something it was authorized to do. I'm asking you why you think that's correct on an even playing field. As a first principle matter, I think it's correct. It's a cleaner way to resolve it. If there's a stay, and this court's United Steel case that we've cited that talks about the earlier cases, there was confusion created by the fact that if there's a stay as opposed to a dismissal, appellate rights get confused. Is it a final order? Is it a not final order? If there's just a stay, as Your Honors know, on the district court docket, the case stays on the docket, then it comes up for status conferences. It's there. It's a living thing that stayed, but it's on the docket. It could be confusing, I think, for other people's rights, because if an individual comes into federal court claiming they're going to bring a class action, theoretically others might rely on that, even if they've been compelled into individual arbitration. So I think it's just a cleaner way to deal with it. And it's not prejudicial to Mr. Suarez or the other individual plaintiffs because there was a dismissal without prejudice. If they get a judgment in their favor by the arbitrator and they want that confirmed, they just come back to court and get that, right? Exactly. All we're talking about is paying a second filing fee. Exactly. That's all we're talking about. That's correct. And I think if the arbitrator determined that some issue was not arbitrable, and counsel is right, we argued that the arbitrability issues go to the arbitrator, but if something came back, then there would be relation back. So there's no prejudice at all. And I should ask, Judge Jordan, you asked me about first principles, but here this is another waiver issue. Plaintiffs didn't ask the judge to stay the action. Uber asked to dismiss the action, and the alternative, stay the action. But plaintiffs didn't say, Your Honor, please, if you are going to compel arbitration, stay the action, don't dismiss it. So it's another waived issue in this court. You talked about appellate rights. Had the judge stayed it instead of dismissed it, what's your position as to whether plaintiffs would have been able to appeal the order? I think under the FAA itself, they would have been able to appeal. But it does get confusing, because sometimes parties don't realize that their rights have been true, that they need to appeal. And so I've seen it before. Just as you all know, with appellate jurisdictional issues, I just think certainty is better. Stay can be effective, and clearly, if a party asks, the court under Section 3 is required to stay the action. So I think on that issue, the court acted completely appropriately, and plaintiffs did not ask them to stay the action. I did want to address just briefly the NLRA Section 8 issue, because that is not a new issue. And counsel, again, I appreciate that that wasn't making excuses for not raising it, but said it hadn't become a hot issue yet. But the D.R. Horton NLRB decision that really spawned all this was from 2012, and other litigants clearly were raising this issue. That's how it got to the Seventh Circuit. That's how it got to the Ninth Circuit in the Morris and Lewis cases, which are now before the Supreme Court. But as Judge Carnes noted, those are very different cases that are pending in the Supreme Court. Those were mandatory arbitration cases without an opt-out provision the way we had here. So under the Section 8 of the NLRA argument, which, as counsel mentioned, there was not a breath about that statute in the district court, but the theory is that mandatory arbitration is somehow coercing or restricting an employee's ability to collectively act and to organize. We think that's wrong on the merits, but that's the theory. When there's an opt-out, that theory isn't even triggered. In the Lewis case, which counsel cited, the very next sentence in Lewis notes that the court is not addressing that issue. So Lewis didn't endorse that theory. The court said this is the Seventh Circuit. We have no need to resolve these differences today, because in our case it is undisputed that assent to the arbitration provision was a condition of continued employment. And the Morris case, the other case that's before the Supreme Court from the Ninth Circuit, specifically noted that one of its prior decisions that we've cited, the John Muhammadi decision in the Ninth Circuit, had ruled specifically that the NLRA Section 8 provision wasn't triggered where there was an opt-out provision. So it's just a different issue. Those cases are different. So even if they had been properly preserved, it's a different issue than is now really, in counsel's words, kind of the hot topic. I guess the other, I'd go back to this question of appellate rights and the list of questions I'll just finish up, that here this unconscionability was the sole focus. The district judge conscientiously looked at the arguments, the factual record that were declaration submitted, and ruled like 18 other courts that these arbitration agreements are enforceable, they're not unconscionable. The Ninth Circuit in the Muhammad case that we've cited ruled under California law. Four different Florida district judges have now upheld these agreements. And I think that may explain why there was a shift on appeal in terms of legal theory, because the argument that was litigated below has been repeatedly rejected. So we would ask the Court to affirm these issues are being litigated in other courts, so it's not like by other individuals, so it's not like this is the only case that could resolve those issues. Thank you very much.  Mr. Hill? Thank you, Your Honors. I'll be brief. In terms of the class waiver issue and the opt-out, I'm still not clear on why it is. And, I mean, with all due respect, Uber gets to decide that my clients only get 30 days to opt out of an arbitration agreement. I don't know where they came up with that date, why 30 days is okay. Is 15 days okay? Is five days okay? I mean, the fact of the matter is. My first point is that it doesn't matter how many days they get, it's still not appropriate. Correct. The NLRA is. They could have given you two years, and you still would think you can't do it. Correct. The NLRA is a substantive right. You cannot contract around substantive rights, which is what Uber has tried to do with this arbitration agreement. And the FAA and the NLRA can get along because the FAA has a savings clause, and the FAA says while arbitration is favored and arbitrable agreements should be arbitrated, if there is something illegal about the arbitration agreement, in this case it would be the waiver, then the savings clause of the FAA would provide for a defense to the enforcement of the contract and make the agreement unenforceable. And that's really what the Supreme Court, I think, is looking at, and that's why, again, it's one of the important issues. Wasn't raised in my opening brief at the lower level. Wished it was. Can't go back in a new time. I appreciate your time. All right. Thank you both very much. We appreciate it. We're in recess until tomorrow. All right. Thank you.